This morning is number 07-3216, Kahn v. Department of Justice. Mr. Roth. Thank you, Your Honor. May it please the Court? Your Honors, this is a case brought under the Whistleblowing Protection Act, and it presents on appeal a very narrow issue relating to the subject of jurisdiction. First, let me say that I believe we have a dispute with the government over what Your Honor's standard of review is. We believe the standard of review is de novo, and that it's a purely legal determination. In its brief, the government suggests that the findings of the administrative judge in his initial decision should be given some deference under the substantial evidence standard that cites the Bolton case. I would respectfully disagree with that assessment because it's important to understand that there was no hearing here. Mr. Roth, let me ask you, your position is that Mr. Kahn made a non-frivolous allegation of board jurisdiction, pointing to the third prong of Huffman, right? Correct. Okay. Now, you say at page 24 of your brief that he was only required to make a non-frivolous allegation of board jurisdiction, right? Correct. Then, the only question I have, well, I might have another question, but then at page 2 you say, in the alternative, he's entitled to have an evidentiary hearing on jurisdiction. As I read the cases, though, isn't it the case that if he made a non-frivolous allegation, he goes on and he gets a hearing on the merits? If, however, he didn't, he loses and the case is over. I don't think, as I read the cases, is there any middle ground? Judge, I think, I respectfully disagree. I think at this stage, since we have not had a hearing, we have to make a non-frivolous showing of jurisdiction. However, once we've made that non-frivolous showing, I believe we have an additional burden at the hearing itself to establish jurisdiction by a preponderance of the evidence. But it would be a mixed hearing on the merits. Yes, it certainly would. That's what I was going to ask. When you say to establish jurisdiction, you're talking about establishing that he met the requirements of the Whistleblower Act. Yes, Your Honor. Yes. Okay. Well, then let's discuss the merits. Okay. Thank you, Your Honor. I believe the judge, the administrative law judge in this case, was wrong in dismissing on jurisdictional grounds because I believe we did make a non-frivolous showing. And I believe that Mr. Kahn's affidavit does precisely that. There are basically two affidavits in evidence here. There's Mr. Kahn's affidavit and there's his supervisor, Mr. Mitchell's affidavit. Wasn't it part of Mr. Kahn's job to participate in the investigation of prosecution of drug violations? Drug violations generally, Your Honor, but not this drug violation. And doesn't that encompass witnesses and whether the selection of witnesses was proper in accordance with the rules? Well, Your Honor, this was not his case. See, if this were his case, I might have a different argument, but this case was assigned... You mean his role was limited only to one case? No. What I'm saying is that... Wasn't he part of a team that investigated a variety of cases? Well, what he was not required to do was report misconduct. That's clearly what he was not required... I mean, he was obligated to do it, but under the case law, that was not a normal part of his duties. I think the agency concedes here... But if they're developing cases and an improper witness was being utilized in one of the cases, isn't that within the compass of his job? Well, it's not within the compass of his job, in my opinion, unless the case is assigned to him. See, this case, Your Honor, was assigned to TFA Enos and Special Agent Meehan. And based on his involvement in the Buford office, he saw that there was misconduct occurring with respect to the use of the informant. And it was not a case that was assigned to him. It was assigned to two other individuals. And it's also important to understand that he had no supervisory responsibility over those individuals. So, what I'm saying is, under the case law, he had no obligation under those circumstances to straighten this issue out. But he did. He took it to his supervisor, his initial supervisor, Mr. Mitchell in the first instance, and Mr. Osloff in the second. But this was not his case. Mr. Osloff, this is a... I guess you refer to... you say in your brief, I think in some way you say, he interjected himself into this. Yes, he did. This case was assigned to another special agent, Special Agent Meehan. My client had no involvement with this informant, never met this informant, did not register this informant, was not in any way involved in this investigation. And he was not the supervisor of those who were doing that. The supervisor was in Charleston. So, my view is, if he is interjecting himself into some activity that he normally wouldn't be involved in, that is something over and above which I think permits him to take advantage of the whistleblowing statute. And I think it's very important to understand that if you accept the government's position here, it would virtually nullify the whistleblowing statute in all instances. Because normally if somebody is going to uncover misconduct, they're going to uncover misconduct during the course of their normal duties. How could it be otherwise? Unless they're off on a frolic of their own, or they're seeing misconduct on weekends when they're at home, they're going to discover misconduct during the course of their normal duties. The government knows. You're saying his job was to investigate the prosecution of criminal violations, but not the misuse of the informant. Yes, Your Honor. If it were his informant, that would be a different matter. But this was not his case and not his informant. And anybody in that unit could register an informant. And the implication here in Mr. Mitchell's affidavit is that Mr. Kahn had some sort of supervisory, overall supervisory responsibility over the Buford post of duty. We dispute that, and he disputes that absolutely clearly in his affidavit. As a matter of fact, Special Agent Meehan had more seniority as a DEA agent than he did. And I think that's very important. Judge Roth, let me ask you there. We have the appendix here from the parties. However, if you look in the appendix, there are, I guess the first item is the statement of the certified list of documents. And we have a number of items in there. Number 17, appellant pre-hearing submissions, agency pre-hearing submissions, agency motion to dismiss, various briefs and so forth. Those aren't included in here. The parties, I guess you and the government have only felt it was necessary to give us, as you say, the position description, the Kahn declaration, the Mitchell declaration. What about these other items? Why, one would think, I mean, you know, when we're talking about did someone make a non-frivolous allegation, that we'd want to take a look at these other items. Is there some reason these are not in there? Well, Judge, all of the factual... Excuse me? Yes, I understand what you're saying. All of the factual items are in there. The briefs themselves, this issue that we're arguing here, was the subject of a motion, of a jurisdictional motion. And what we included in the appendix were the factual underpinnings of those motions, i.e., Mr. Kahn's affidavit and Mr. Mitchell's affidavit. As far as I know, the only thing that's missing are the actual briefs that were submitted. The question is, is there a non-frivolous allegation with respect to the jurisdictional fact? And you're saying that you and the government have come to the conclusion that in order to adjudicate that, and we'd have to order the whole record, I suppose, at some point, but that we have everything we need for purposes of argument today. Correct. As far as I know, you have everything factually that was in the record below. The only thing you may be missing are the briefs of the parts. Then let's say, accepting the presentation as you have made it, as true and as correct, and if it looks as if there may well have been a non-frivolous allegation of whistleblowing, what is the remedy? What is the relief down the road? I know the position is that there was a retaliatory transfer. Yes. But I doubt that your client is asking to be put back in the middle of this environment in which, according to the record as you've presented it, there was significant hostility, perhaps for the very reason that you presented, that he did go beyond his job and, say, blow the whistle on someone else who he thought was not following the rules. But he is now established elsewhere, I gather. It's not a matter of monetary damages, is it? Well, Your Honor, the remedy that we're seeking is a reversal of the transfer. Mr. Kahn has been in Atlanta since the transfer. His family still lives in Buford, five hours away. He commutes five hours every weekend to see his family. So, yes, the answer to your question is yes. We want a reversal of the transfer. That, under the whistleblowing statute, plus consequential damages, not compensatory, but consequential damages, out-of-pocket expenses, which in this case I concede are minimal, are the only damages that are cognizable in a whistleblowing statute. So what we're looking for is a reversal of the transfer. And immediately you want it to go back for a hearing on the merits. Exactly. Yes, Your Honor. Okay. Let's hear from the Governor. Mr. Governor. upon which his case rests. This case is a factual case. It was the job of Mr. Kahn at the hearing below to allege facts that, if true, would establish the jurisdiction of the court. He had to prove four things. Only one is at issue. The board did not reach the issue of whether there was a contributing factor between any covered disclosure and the admittedly covered personnel action. So what he says is that he made allegations to his supervisor. The board judge, looking at this court's decision in Willis, and more particularly Huffman, focused, as both parties did, on whether these disclosures were part of his job. He established, or he found, based on two pieces of evidence, as a factual matter, they were a part of his job. Well, he did say, the A.J. did say, Mr. Governor, that his position description makes it clear that it was not one of his responsibilities to report misconduct. That's correct. And then he goes on to say that, as I understand it, that what happened here was he was responsible for conducting investigations and so forth, and as a result, he was involved in this investigative process that was therefore part of his duties. I mean, that's what the A.J. said, basically, right? In essence, but the key fact, the fact which is not in dispute, and that's why the judge found a reason to have a hearing in this case, is the statement of Mr. Mitchell, his supervisor, saying as follows, I designated him to report to me daily regarding administrative matters and ongoing law enforcement operations. Conn called me every day to report what the office was doing, administratively and operationally. Page 760. He was required to notify me, at least verbally, of TFO Annis' proposed use of the CS to purchase crack cocaine. Page 762. Finally, Conn was directed to write the August 2002 memo, quote, should anyone raise issues later, make OPR allegations, or otherwise have concerns. I mean, the Conn declaration, if you take on the one hand what Mr. Mitchell says, and on the other hand, the Conn declaration and his position description, and you see a conflict there. What is the result in that kind of a situation when we're just talking non-frivolous allegations? Because one of our cases, Durrell talks about, you look at this in the context of a summary judgment proceeding. Right. And the non-frivolous allegations. Yes, Your Honor. And if there are these kinds of disputes, the case goes on. And he may lose on the merits, but, you know, it goes on. I think what Your Honor is referring to is the well-pleaded allegation. Well, in this case, we said it was not well-plead because what Mr. Conn was talking about. Well, Mr. Conn certainly has said, in conclusory fashion, that his job is not to report misconduct. But that's the way in which he attempts to avoid the hearing that sinks his case. What he calls misconduct. But he's not entitled to a hearing. I mean, it's clear that, I mean, the issue here is whether, as I understand it, it seems in a whistleblower protection act case, you have to make a non-frivolous allegation to establish board jurisdiction. Correct. All the cases seem to say that. And we affirmed in our in-bank decision in Garcia that that was the case. We said there's two strains. There are the, you know, involuntary resignation in retirement. Then there's the whistleblower. Right. One rule there. So he has to make a non-frivolous allegation. And it seems that if he makes a non-frivolous allegation, he proceeds to the merits. Right. Okay. If he doesn't make a non-frivolous allegation, the case is over. Right. He's out of luck. It's the end of it. I mean, we have said there's no, in this area, there's no hearing on the jurisdictional issue. Right. So it just comes down to, I think, whether there's a non-frivolous allegation. And we've said you look at the documentary record. Right. But let's agree that a non-frivolous allegation is one that alleges facts that, if proven true, would establish the board's jurisdiction. Well, he says I didn't, he says, what he does, he said it wasn't my responsibility to make these, to invest, to make reports on people. It's not in my position description. And he says also that I was not part of this investigation involving the informant and so forth. In Mr. Ross's words, he interjected himself. Now, granted, on the other side, you have the Mitchell Declaration. But it seems to me you have at least a conflict here, and that puts you in the situation of moving on to the hearing on the merits. What you have is two attorneys arguing over the weight of the evidence. Mr. Kahn's declaration, Mr. Kahn's August 2002 declaration, his letter, the alleged disclosures, basically showed that his fingerprints were all over this particular action. He, for example, contacted ANIS, Special Agent ANIS, independently of going through me and his colleague, who was supposedly going to register the confidential source. ANIS himself looked directly to Mr. Kahn to help him resolve questions concerning the appropriateness and the funding. Mr. Kahn interceded on behalf of ANIS, asking whether the rules that were at issue were going to be changed. But I read you the most compelling statement only set in sentence on page 47. I'm sorry, what page? Page 47 of the record. And this is the sort of thing that is completely consistent with Mr. Meehan's order to Mr. Kahn to report to him daily on all operational matters. Mr. Kahn concedes that he was to report – well, he certainly does not dispute – that he was to report all operational matters. And so on page 47, for example, you see there in the one, two, three, third full paragraph, beginning with the words, on May 10, 2002. In the second sentence, he writes, I spoke with Rack Mitchell for several hours while Rack Mitchell read the new CS policy, Off.Firebird, or perhaps maybe it's offensive, Firebird, not sure what that means. In an effort to expedite obtaining approval to utilize – I think that's the name of the CS right there, so I won't read it into the record – as a CS, myself and Rack Mitchell determined that there is no shortcut in obtaining approval to utilize the CS, and until the CS was signed up as a DEA CS, the DEA could not provide money for the crack cocaine. Then he goes back to Annis. So all throughout here, you can see him talking to Annis directly. In one case, Annis calls him at his home directly. They do not go through Meehan. Mr. Roth says that that was him, that the record shows him interjecting himself into this. As I understand it, this document was requested by Mitchell to reflect the communications and the discussions that had taken place. That's right. But what it shows is that if we rest our case on this, he was ordered as part of his job, as consistent with his duties as an agent who ran investigations, to report daily on operational administrative matters within the task force, which was very small. That's really the issue, isn't it? And this is where I do have trouble. You're asking us to draw an inference, a factual inference, from let's say that Mr. Khan is in fact in one of our cases calls him an intermeddler, that he's looking to see what the guy next door is doing and seeing he's not following the rules, and he reports it. And this also shows that he was quite diligent in reporting what the guy next door was doing. But how does it also establish prima facie, as a matter of jurisdiction, that it was part of his job to report the guy next door? Because the documentary evidence establishes, Your Honor, that he was... Are you talking about what you just showed us? I'm talking about this document, which shows that on a daily basis, certainly all the days he refers to here, he reported daily to his supervisor, who was over an hour and a half away. And this shows that he was perhaps a persistent whistleblower. If he saw that something was wrong, he didn't say, well, I told the boss. It could have been, if you only read this and you didn't know that it was his job to report daily on operational administrative matters, you might surmise that wading into these facts. However, when you realize that his boss told him, you must report to me daily on administrative and operational matters, and then you see that he was in fact doing that. And where is the record show that he was told to report daily on administrative matters affecting other agents? Yes, Your Honor, this is the declaration, I read it to the record earlier, of his boss, Rack Mitchell, President of Asia. Okay, so that's the conflict that we've been talking about. But it's not a conflict, because both of them agree that he... First of all, he was ordered to report daily. He never says he was not. And then we see that he was in fact operating daily. He characterizes what the nature of these things as misconduct. They are not misconduct. These involve...perhaps you could call them that. Perhaps they involve rules. But they are operational rules having to do with the management of these... Well, first of all, the relations with the non-federal partners on the task force, and the management of sources. This particular source could have affected everybody's work because he was dangerous, he ripped off drug dealers, he was a felon. His being signed up is something of concern, obviously, to any DEA agent. And in this case, Mr. Kahn was the senior agent, in so much as he was the first one to report to this drug task force when it was founded in 2000. In any event, he calls it misconduct. I thought the record made clear that these were equals. When you say he was senior, you're not saying he was the supervisor of the person who... No, and he makes something of that, Your Honor, saying he was not senior. He says they were co-equal, they were both GS-13s. He says that the other guy, Special Agent Meehan, actually had some time and grade on him. But the fact was, he was the most tenured on that team because he arrived in August of 1999, the first DEA agent in Buford, working with other local authorities. In January 2000, the team was formed. He was the one and only DEA agent. It wasn't until a year later, January 2001, when Special Agent Meehan arrived. All of that aside, his boss says, and it's uncontradicted, I told him to report to me daily on operational and administrative matters. If you find, and the judge did, and in his declaration, Mr. Meehan says, that these are operational administrative matters, the fact that you may be able to characterize them as, let's say, on-the-job misconduct, does not take it out of the fact that he is an employee performing his job. Well, then doesn't it become particularly troubling that he was the one that he was punished? He was transferred. The record, as it's presented to us, is everyone was mad at him for whatever reason. It may be your argument. So they transferred him to a location that he didn't want to go to. And that gets to the part of the case that the judge did not address because Mr. Meehan, I'm sorry, Mr. Khan, must show a non-frivolous allegation as to all four matters when the judge concluded that he had not made a non-frivolous allegation as to the business of the covered disclosure. He did not go farther to contributing cause. I'm sure what the government would argue at trial, sorry, at the hearing, if this were to be returned to the board, would be that, first of all, it was not the disclosures. It was his subsequent, according to the assistant U.S. attorney, lying to an assistant U.S. attorney on an unrelated matter and then subsequently writing incorrect reports on yet another matter. But when you're looking at whether there was some sort of prima facie case, the basis for jurisdiction, you were entitled, must look at what happened next. What's presented to us on the record before us as retaliation is relevant, is it not, as to whether what he was doing was viewed as whistleblowing rather than just following the rules? Sure. That's going to be the ultimate question. But you'll recall from the evidence in this case, he was backed up to the hilt by his chain of command until the U.S. attorney's office. There was no person in his chain of command that took a retaliatory action towards him. It was the U.S. attorney's office who declared him julio impaired, meaning he could not testify. It's similar to declaring, to take, to revoking an employee's security clearance. Once that happens, the employing agency has no choice. But that's a question having to do with causation, having to do with contributing factor, which is not before the board. I'm sure that Mr. Roth would argue, and he'd have a certainly sound argument to say, come on, I've at least made a non-frivolous allegation that my reports connect to my ultimate transfer. The agency would then, and this may very well require evidence here hearing on jurisdictional facts, ultimate facts too, assert that there was a break in the chain of causation, that his chain of command did everything they could to save him, but in the end they had no choice and had nothing to do, from the agency's perspective, with his initial report. Steve Linehan, let me ask you. That's beyond what we're talking about today. I didn't want to cut you off, but we're getting near the end of the argument period. You argue that the evidence is not sort of, or the written record, I mean we have to look at this de novo, that says on a jurisdictional issue, and you're saying the evidence is not in equipoise on this, right? You're saying he's not provided, he's not proven by a preponderance of the evidence that he made a covered disclosure. But he does have to prove by a preponderance of the evidence. Sure. He has to make a non-frivolous allegation. Right. So, if in fact you have a situation where you have, on the one hand, an allegation that standing alone is non-frivolous, and it asserts facts, but on the other side someone's saying, no, those are not the facts, and there is record support for each one. In that kind of a situation, would you not go to a hearing on the merits? I think the argument would be it was arbitrary not to do that. Okay. However, here, they were, as I said, we don't see the evidence in conflict. It's simply a characterization of the evidence as misconduct, which it may very well have been, but under this court's case in Huffman, it was a matter within, as a matter of fact, it was a matter within his job description or his operational details. Now, if we determined that he had not made a non-frivolous allegation, in other words, if we were to affirm D.A.J.'s decision, which became the final decision, the case would be over, correct? Correct. Now, if we say that a non-frivolous allegation was made with respect to Prong 3 of Huffman, which is what we're dealing with here, what would happen? Would it go back for hearing on the merits, or would it go back for more jurisdictional discussion, or what? If you determine that he's made a non-frivolous allegation, it goes back for hearing on the merits, which would consider the very same elements that would be considered on jurisdiction. Unlike a Garcia-type case, an adverse action sort of a case, perhaps involving discrimination or allegations of voluntary removal, there's no need for the judge to stop the hearing upon a finding that the judge does not have jurisdiction, for fear that he might then reach a pendant jurisdiction having to do with discrimination and so forth. Here, it's more or less one-stop shopping. First of all, he has to make a non-frivolous allegation. We say he's not. If he makes a non-frivolous allegation on all elements, he goes forward to a jurisdictional hearing. I'm sorry, to a hearing that simultaneously considers jurisdictional merits. If it prevails, he's entitled to a remedy. If he doesn't, he's not entitled to a remedy. Okay. Thank you, Mr. Gellin. If I might say, I'm replacing my colleague, Steve Abelson, who's testified ably before this court on many occasions, and he was in surgery, rather serious surgery, but he's in post-operative care, and they expect that he'll have a very successful recovery, and as he tells me, a long life. He wanted me to assure the court that he'll be back tomorrow. Good to hear that. Yes, thank you, Mr. Gellin. We look forward to seeing him. Mr. Roth. Very briefly, Your Honor. Going back to the August 16, 2002 memoranda, which is located in Volume 1 of the appendix, pages 46 through 49, it's a four-page memoranda, and if you look at it as a whole, it's absolutely clear that Mr. Kahn is interjecting himself into Mr. Meehan and Mr. Annis' case. If you look at the bottom of page 47, now this is after Mr. Annis goes out and purchases and has the informant purchase some cocaine without being registered. It says, A short time later, Special Agent Meehan left the office and traveled to Charleston to meet with Rack Mitchell to further discuss utilizing Being in a small office, it is important to work with agents from all offices, however. TFA Annis should have at least contacted Special Agent Meehan and coordinated efforts with him, since Special Agent Meehan had been working with TFA Annis and attempting to sign off the CS. So that's clear that Meehan and Annis are working together, Meehan is left out of the loop on the most important event that happens in the undercover case. They're buying cocaine without the CS being registered, so Kahn has to interject himself into the equation to try to straighten it out. Mr. Roth, what is your response? Mr. Gillingham points to this document and also I think he points to the Mitchell Declaration for the proposition that, I, Mr. Mitchell, gave Mr. Kahn instructions to report to me on a regular basis as to matters at the Buford office and so forth. And Mr. Gillingham says that, I think Mr. Gillingham's argument would be that even though one could argue, as you do, that Mr. Kahn interjected himself into the Meehan-Annis job or investigation, still this was within the, this and his reporting and talking to Mitchell was in the overall purview of the directive he'd gotten from Mitchell. That's, I think, what he argues. Do you understand? Yes, I understand what he's arguing and I would suggest that there's a factual dispute on that issue. Basically what Mitchell says in his affidavit is that Mr. Kahn is some sort of de facto supervisor. Even though he's at the same level as everybody else, he's really a de facto supervisor in the Buford office. We dispute that and Mr. Kahn disputes it unequivocally in his affidavit. And this memorandum of August 16, 2002 shows precisely what his role was in this issue. He was concerned about it because it wasn't being handled properly and he interjected himself into it. So your position is that at the very least, there's a fact issue, there's a disputed fact issue that since we're in a different environment than we are when we have a Garcia-type case, involuntary resignation or retirement, you have enough in this case to get you to a hearing and that hearing would involve, in your view, and I think this is what Mr. Gilligan was saying, a mix of merits, jurisdictional issues. I agree, Your Honor. Thank you. Thank you, Mr. Walker, Mr. Gilligan. The case is taken into submission. All rise. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Yes.